1   **MUSICK, PEELER & GARRETT** LLP
    ATTORNEYS AT LAW
2   650 TOWN CENTER DRIVE, SUITE 1200
    COSTA MESA, CALIFORNIA 92626-1925
    TELEPHONE 714-668-2421
3   FACSIMILE 714-668-2490

4   Jack W. Fleming (State Bar No. 86292)
    Thomas J. Eastmond (State Bar No. 211591)

5   Attorneys for Defendant and
    Cross-Claimant TPA-CKY Joint Venture.
6

7

8                      **UNITED STATES DISTRICT COURT**
9
    **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**
10

11
    UNITED STATES, For the Use of RENTAL      | Case No. C-07-4929 JL
12  SOLUTIONS, LLC
13              Plaintiff,                    | **CROSS-CLAIM OF TPA-CKY JOINT
                                              | VENTURE FOR:**
14      vs.
15  CENTRAL VALLEY CONSTRUCTION,             | **1. Express Contractual Indemnity**
    INC.; TPA-CKY JOINT VENTURE, CKY,        | **2. Implied Contractual Indemnity**
16  INC., TAN PHUNG & ASSOCIATES.,           | **3. Equitable Indemnity**
    AMERICAN CONTRACTORS INDEMNITY
17  COMPANY, and DOES 1 through 20,
    inclusive,                               | Complaint Filed:  September 21, 2007
18                                           | Trial Date:       None set.
                Defendants.
19

20  TPA-CKY JOINT VENTURE,

21              Cross-Claimant,

22      vs.

23  CENTRAL VALLEY CONSTRUCTION,
    INC., a California corporation; PHILLIP
24  VALLEJO, an individual; ANTHONY GENE
    ARNAIZ, an individual, and ROES 1 through
25  10, inclusive,

26              Cross-Defendants.

27

28

559367.1

Defendant and Cross-Defendant TPA-CKY Joint Venture ("TPA-CKY") alleges, for its Cross-Claim herein, as follows:

### GENERAL ALLEGATIONS

1.      TPA-CKY is a joint venture between TPA, Inc., a California corporation, and CKY, Inc., a California corporation.  TPA-CKY is properly licensed and qualified to do business in California.

2.      TPA-CKY is informed and believes, and on that basis alleges, that Cross-Defendant Central Valley Construction, Inc. ("Central Valley") was a corporation organized under the laws of the State of California whose corporate powers were at all times relevant herein suspended by the California Secretary of State.

3.      TPA-CKY is informed and believes, and on that basis alleges, that Cross-Defendants Phillip Vallejo ("Vallejo") and Anthony Gene Arnaiz ("Arnaiz") were officers and directors of Central Valley, and were, at all times relevant hereto, doing business in the State of California, within this District and Division.

4.      TPA-CKY is informed and believes, and on such information and belief alleges, that each Cross-Defendant designated herein as ROES 1 through 10, inclusive, is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each such Counterdefendant is liable to TPA-CKY for the damages suffered by TPA-CKY as set forth herein.

5.      TPA-CKY is informed and believes and on that basis alleges that, at all times relevant hereto, there was a unity of interest and ownership between Central Valley, on the one hand, and Vallejo, Arnaiz, and ROES 1-10, inclusive, on the other hand, such that any individuality and separateness between said Cross-Defendants has ceased, in that Central Valley is, and at all times herein mentioned was, so inadequately capitalized that, compared with the business to be done by Central Valley and the risks of loss attendant thereon, its capitalization was illusory and trifling.  Furthermore, TPA-CKY is informed and believes and on that basis alleges that Central Valley is, and at all times mentioned herein was, the alter ego of Vallejo, Arnaiz, and

1  ROES 1 through 50, inclusive, and there exists and at all times herein mentioned has existed, a

2  unity of interest and ownership between said Cross-Defendants such that any separateness has

3  ceased to exist, in that Vallejo, Arnaiz, and ROES 1 through 10, inclusive, commingled Central

4  Valley's assets with their own.  TPA-CKY is informed and believes and based thereon alleged that

5  at all times herein mentioned, Central Valley was a mere shell, instrumentality and conduit

6  through which Vallejo, Arnaiz, and ROES 1 through 10, inclusive, carried on their business in the

7  corporate name, exercising complete control and dominance of Central Valley's business to such

8  an extent that any individuality or separateness between Central Valley, on the one hand, and

9  Vallejo, Arnaiz, and ROES 1 through 10, inclusive, on the other hand,  does not, and at all times

10  herein mentioned, did not exist.

11        6.    Furthermore, TPA-CKY is informed and believes, and on that basis alleges,

12  that the activities and business of Central Valley were carried out without the proper observation

13  of corporate formalities, e.g. that shareholders' or directors' meetings were not held and records

14  and minutes of corporate proceedings were not maintained.  TPA-CKY is further informed and

15  believes, and on that basis alleges, that Vallejo, Arnaiz, and ROES 1 through 10, inclusive, carried

16  on their business in the name of Central Valley and/or the name "Blackrock Company" and/or

17  other entities, or in their own names, while exercising complete control and dominance of such

18  business to the extent that any individuality or separateness between and among the above-named

19  Cross-Defendants does not, and at all times relevant hereto did not, exist.

20        7.    This Court has supplemental jurisdiction over these Cross-Defendants

21  pursuant to 28 U.S.C. Section 1367, in that the claims alleged herein are part of the same case or

22  controversy as those presented in the Complaint of Plaintiff Rental Solutions, Inc. ("Rental

23  Solutions") against TPA-CKY in this action, and the pertinent issues of fact and law are

24  substantially identical or related to those in Rental Solutions' Complaint.

25        8.    On or about June 29, 2005, TPA-CKY entered into an agreement designated

26  Contract No. W91238-05-C-0019 (the "Prime Contract") with the United States of America,

27  through the Army Corps of Engineers, to provide certain labor and materials for the improvement

28  of flood control on the Napa River in Napa County, California (the "Project")

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

9.      On or about November 30, 2005, TPA-CKY entered into a written subcontract agreement with Central Valley (the "Subcontract"), pursuant to which Central Valley agreed to perform a substantial portion of the work required by the Prime Contract for a lump sum price of $1,622,012.00.  A true and correct copy of the Subcontract is attached hereto as Exhibit "A".

10.     TPA-CKY is informed and believes that in the course of performing its contractual scope of work pursuant to the Subcontract, Central Valley rented equipment from Rental Solutions.  TPA-CKY is further informed and believes that Rental Solutions contends that Central Valley has failed to pay the amount owed to Rental Solutions for the rental of such equipment.

## FIRST CAUSE OF ACTION

### (Express Contractual Indemnity Against All Defendants)

11.     TPA-CKY realleges and incorporates by this reference the allegations contained in Paragraphs 1-10, inclusive, as though fully set forth herein.

12.     On or about September 21, 2007, Rental Solutions filed its Complaint instituting this action, naming TPA-CKY as a defendant.

13.      Rental Solutions' Complaint alleges a cause of action against TPA-CKY, among others, on a Miller Act payment bond, pursuant to 40 U.S.C. Sections 270a-270e.  The demand of Rental Solutions' Complaint on this cause of action is $41,629.75, together with interest thereon at the rate of ten percent annually until paid, as well as reasonable attorney's fees and costs.

14.     The Subcontract provides that Central Valley is required to defend, indemnify and hold harmless TPA-CKY from any and all claims, demands, losses, and liabilities to or by third parties arising from, resulting from, or connected with work performed or to be performed under the Subcontract.

15.     TPA-CKY has performed all covenants and conditions required of it by the Subcontract to be performed, except as excused by the acts or omissions of TPA-CKY.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

559367.1

4

CROSS-CLAIM OF TPA-CKY JV

16.    Although TPA-CKY has denied and continues to deny that Rental Solutions has been damaged in any way, the possibility exists that Rental Solutions will prevail against TPA-CKY, or its bonding company, American Contractors Indemnity Company ("ACIC"), on one or more of the purported causes of action asserted in its Complaint, for damage that is the contractual responsibility of Central Valley.  In such event, TPA-CKY will be damaged in an amount equal to any judgment rendered against it or ACIC in favor of Rental Solutions, and will be entitled to be indemnified and reimbursed by Central Valley, Vallejo, Arnaiz, and ROES 1-10, inclusive, in the same amount, or, in the alternative, for such sums as the Court deems are the proportional responsibility or obligations of Central Valley, Vallejo, Arnaiz, and ROES 1-10, inclusive.

17.    In addition, TPA-CKY has been, is being, and will continue to be required to incur expenses in defending itself against the purported causes of action asserted by Rental Solutions in its Complaint, including, but not limited to attorneys' fees and other costs of litigation.  The full amount of these costs is not presently ascertainable and will not be ascertained until the conclusion of this action, at which time TPA-CKY will seek leave of court to amend this Cross-Claim by inserting such amount.  Such fees and costs will be recoverable by TPA-CKY from Central Valley, Vallejo, Arnaiz, and ROES 1-10, inclusive.

## SECOND CAUSE OF ACTION

### (Implied Contractual Indemnity Against All Defendants)

18.    TPA-CKY realleges and incorporates by this reference the allegations contained in Paragraphs 1-17, inclusive, as though fully set forth herein.

19.    Under the terms of the Subcontract, Central Valley had an implied obligation to defend, indemnify, protect and hold TPA-CKY harmless from any claims asserted by any subcontractors and/or suppliers of Central Valley.  Notwithstanding the above, Central Valley, Vallejo, Arnaiz, and ROES 1 through 10, inclusive, and each of them, have failed to defend, indemnify, protect and hold TPA-CKY harmless from the claims asserted by certain subcontractors and/or suppliers of Central Valley, including the claims of Rental Solutions.

20.    TPA-CKY has performed each and every act and duty required of it to be performed in accordance with the Subontract, except to the extent that it is otherwise excused by Central Valley's nonperformance.

21.    Although TPA-CKY has denied and continues to deny that Rental Solutions has been in any way damaged by any act or failure to act on the part of TPA-CKY, the possibility exists that Rental Solutions will prevail against TPA-CKY or its bonding company, ACIC, on one or more of the purported causes of action asserted in its Complaint.  In such event, TPA-CKY will be damaged in an amount equal to any judgment rendered against it in favor of Rental Solutions and will be entitled under the implied covenants of the Subcontract to be indemnified and reimbursed by Central Valley, Vallejo, Arnaiz, and ROES 1 through 50, inclusive, in the same amount.

22.    In addition, TPA-CKY has had to employ attorneys to defend itself against Rental Solutions' action.  TPA-CKY has incurred and will continue to incur further costs and attorneys' fees in connection with the defense of this action.

23.    TPA-CKY is entitled to full reimbursement from Central Valley, Vallejo, Arnaiz, and ROES 1 through 10, inclusive, and each of them, for any and all damages, costs and attorney's fees incurred in the defense of Rental Solutions' action and in the prosecution of this Cross-Claim.  The full amount of such damages, costs and fees is not presently ascertainable and will not be ascertainable until the conclusion of this action, at which time TPA-CKY will seek leave of the Court to amend this Cross-Claim by inserting such amounts.

### THIRD CAUSE OF ACTION

### (Equitable Indemnity Against All Defendants)

24.    TPA-CKY realleges and incorporates by this reference the allegations contained in Paragraphs 1-23, inclusive, as though fully set forth herein.

25.    TPA-CKY has denied, and continues to deny the allegations of Rental Solutions' Complaint; to wit, TPA-CKY denies that the damages allegedly suffered by Rental Solutions were caused or contributed to, in any way by TPA-CKY or by any of its agents, employees, servants, independent contractors or bonding companies, including ACIC.

26.    However, should the Court rule that TPA-CKY or its bonding company, ACIC, is liable in any amount to Rental Solutions with regard to any of the purported causes of action of Rental Solutions' Complaint, then TPA-CKY alleges as follows:

(a)    Any such wrongdoing by TPA-CKY, was at most passive and secondary to the primary, active and affirmative wrongdoing of Central Valley, Vallejo, Arnaiz, and ROES 1 through 50, inclusive, and each of them, which were the true causes of any and all injuries and damages allegedly suffered by Rental Solutions.

(b)    TPA-CKY did not actively or affirmatively participate in any wrongdoing complained of in the Complaint, but at all times acted with due care toward Rental Solutions;

(c)    Any liability of TPA-CKY or its bonding company, ACIC, to Rental Solutions results solely from the legal obligation imposed upon TPA-CKY as a result of the primary, active and affirmative wrongdoing of Central Valley, Vallejo, Arnaiz, and ROES 1 through 10, inclusive, and each of them; and

(d)    In the exercise of equity, substantial justice and good conscience, TPA-CKY or its bonding company, ACIC, should not be made to bear the burden of any such wrongdoing of Central Valley, Vallejo, Arnaiz, and ROES 1 through 10, inclusive, or any of them.

27.    As a result of the facts, circumstances and relationships hereinabove alleged, TPA-CKY is entitled to be indemnified and held harmless by Central Valley, Vallejo, Arnaiz, and ROES 1 through 10, inclusive, and each of them, in the full amount of any Judgment that may be entered in favor of Rental Solutions against TPA-CKY or ACIC, or in the alternative, for such sums as the Court deems are the proportional responsibility or obligation of Central Valley, Vallejo, Arnaiz, and ROES 1 through 50, inclusive, or any of them.

WHEREFORE, TPA-CKY prays for judgment as follows:

1.    That Cross-Defendants Central Valley, Vallejo, Arnaiz, and ROES 1 through 10, inclusive, and each of them, be held jointly and severally liable by the Court to indemnify and reimburse TPA-CKY, or its bonding company, ACIC, in whole or in part, for any judgment which may be

1    rendered against TPA-CKY in favor of Rental Solutions, in proportion to

2    such Cross-Defendants' responsibility therefor;

3    2.    That Central Valley, Vallejo, Arnaiz, and ROES 1 through 10, inclusive, be

4    held liable by this Court to indemnify and reimburse TPA-CKY for each

5    and all of its costs, expenses, and attorneys' fees incurred by TPA-CKY

6    heretofore and hereafter in defending and cross-claiming on its causes of

7    action for indemnity in this litigation;

8    3.    For costs of suit incurred herein, including attorney's fees to the extent

9    recoverable pursuant to contract or statute; and

10    4.    For such other and further relief as the Court deems just and proper.

11

12    DATED: November 8, 2007          MUSICK, PEELER & GARRETT LLP

13

14                                     By: _____

15                                     Jack W. Fleming
                                       Attorneys for Defendant and
16                                     Cross-Claimant TPA-CKY Joint Venture

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "A"**

**TPA-CKY Joint Venture**
**S  tard Agreement for Subcontractor Ser  s**

**Subcontract/Agreement Number:** TPA-CKY J801-1          **Effective Date:** 10/05/05

<table>
<tr><td><b>Prime Contractor/Buyer</b></td><td><b>Subcontractor/Seller</b></td></tr>
<tr><td>TPA-CKY JOINT VENTURE (TPA-CKY)<br>302 West Fifth Street, Suite 310<br>San Pedro, CA 90731<br>Telephone: (310) 519-4000 Fax: (310) 519-4029</td><td>Central Valley Construction, Inc.<br>P.O. Box 6009<br>Stockton, CA  95206<br>Telephone: 209-462-2970 Fax: 209-462-2935</td></tr>
</table>

**Contract Type:** Line Item Unit Price as identified in the SCHEDULE SECTION B
Supplies/Services/Price individual contract line items (CLINS) 0001 through 0026.

**Period of Performance (POP):** to be determined

**Prime Contract Agency:** U.S. Army Corp of Engineers (USACE)

**Prime Contract:** W91238-05-C-0019

**Priority Rating:** N/A

This complete Agreement is structured in a format to match the standard uniform contract format as displayed in the Government prime contract W91238-05-C-0019. The use of the uniform contract format provides ease in reading, understanding, following the contractual requirements and matching the contents of this Agreement to the contents of the Government prime contract which is incorporated into this Agreement by reference. This complete Agreement consists of PART I, THE SCHEDULE, PART II, CONTRACT CLAUSES, PART III, LIST OF ATTACHMENTS. The contents are as follows:

**PART I THE SCHEDULE**
| | |
|---|---|
| Section A | Subcontract Agreement (Face Page and Signature Page) |
| Section B | Supplies/Services/Price |
| Section C | Description/Specifications/Statement of Work (SOW) |
| Section E | Inspection and Acceptance |
| Section F | Deliveries or Performance |
| Section G | Subcontract administration |
| Section H | Special Contract Requirements |

**PART II SUBCONTRACT CLAUSES**
| | |
|---|---|
| Section I | Subcontract Clauses |

**PART III LIST OF ATTACHMENTS**
| | |
|---|---|
| Section J | List of Attachments |

This Subcontract/Agreement may hereinafter be referred to in this document as "Agreement", "Subcontract", or "Contract". Any reference to the TPA-CKY contract with the U.S. Government Corp of Engineers will hereinafter be identified as the "TPA-CKY Prime Contract", or simply "Prime Contract".

| | |
|---|---|
| **TPA-CKY JOINT VENTURE (TPA-CKY)** | **CENTRAL VALLEY CONSTRUCTION, INC** |
| By_____ | By_____ |
| (Signature) | (Signature) |
| Date___11-30-2005___ | Date_11-23-05_ |
| Typed Name___K. Timothy Yu___ | Typed Name_Phillip Vallon_ |
| Title___Director_ | Title_Vice President_ |

**TPA-CKY Joint Venture**
**Standard Agreement for Subcontractor Services**

## PART I - THE SCHEDULE
### SECTION A
### SUBCONTRACT AGREEMENT

A.1　　SIGNATURE PAGE OR ALSO REFERRED TO AS THE FACE PAGE.

A.2　　Contracting Parties:

This contract is between TPA-CKY, hereinafter also referred to as "Prime Contractor" or "Buyer" and Central Valley Construction, Inc, hereinafter referred to as "CVC", "Subcontractor", or "Seller".

A.3　　Authority

(a.)　　This agreement is entered into by the Parties as a Subcontract to the US Army COE prime contract W91238-05-C-0019. The Prime contract is between TPA-CKY and the US Army COE. The prime contract requires that certain clauses, provisions and other requirements be incorporated into and flowed down to any subcontract under the prime contract. Therefore, those provisions that are required to be flowed down to the subcontract are included in this contract by specific reference in PART I, PART II and PART III of this document. The Subcontractor is required to comply with any and all provisions incorporated into this document by reference. The reference provisions incorporated by reference have the same force and effect as if they were set forth in full text within this subcontract

(b.)　　This contract, consisting of the FACE page; the SCHEDULE; the SUBCONTRACT CLAUSES; the STATEMENT OF WORK/WORK SPECIFICATIONS; and ATTACHMENTS; together with all the documents incorporated herein by reference constitutes the entire agreement between the contracting parties. All oral or written representations, inducements, understandings, commitments or agreements of any kind or nature between the parties, not incorporated into the contract are superceded by this contract. The contract shall be governed by and constructed in accordance with the laws of the State of California.

(c.)　　Attachment J-1 to this subcontract consists of the NOTICE OF AWARD letter from the COE, dated October 10, 2005, to TPA-CKY and the Prime Contract DD Form 1155 ORDER FOR SUPPLIES OR SERVICES dated 30 September 2003. These two documents are included as hard copies at SECTION J – ATTACHMENTS in order for the Subcontractor to be informed of the awarded work, and to understand the particulars of the scope of work and associated requirements. For example, the BASE ITEMS 0001 through 0007 and the OPTION ITEMS 0008 through 0010 have been awarded and shall be performed by the Subcontractor. OPTION ITEM 0011 remains an option, and if awarded by the COE to TPA-CKY, will be a future contract action for consideration under this subcontract. Additionally, the Government correspondence clearly indicates that the Prime Contract, the RFP, wage determinations, specifications, drawings, etc. and all other correspondence is available in electronic format from web site locations; therefore, since all of these documents are also included in this subcontract by reference, the Subcontractor is responsible to acquire for itself all the cited documents form the reference government web sites. If the Subcontractor has a problem, or cannot, obtain all of the information, then upon request from the Subcontractor TPA-CKY will assist in downloading and securing the information for the Subcontractor.

(d.)　　Any modification, revision, change or waiver of requirements of this contract shall be invalid unless such modification, revision, change, or waiver is issued in writing and duly executed by authorized representatives of the PRIME CONTRACTOR and the SUBCONTRACTOR.

A.4　　CONTRACT TYPE

**TPA-CKY Joint Venture**
**St  ard Agreement for Subcontractor Ser  s**

(a.)  This is a line item unit price contract. The unit prices are shown in the subcontract PART I -
SCHEDULE, SECTION B, individual CLINs.

A.5  AUTHORIZATION TO PROCEED

(a.)  Execution of this Agreement by TPA-CKY will be authorization for SUBCONTRACTOR to
proceed with the work, unless otherwise provided for in this Agreement.
SUBCONTRACTOR shall furnish all Certificates of Insurance before work is authorized to
proceed. SUBCONTRACTOR is not authorized to further subcontract any of the scope of
work without notification to TPA-CKY and written permission by TPA-CKY. Such
permission must be included in the executed Agreement prior to start of work.

TPA-CKY Joint Venture
Standard Agreement for Subcontractor Services

## PART I - THE SCHEDULE
### SECTION B
### SUPPLIES/SERVICES and PRICES

B.1    SUPPLIES AND/OR SERVICES TO BE FURNISHED

| Contract Line Item No (Clin) | Description of Item BASE ITEMS | Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| 0001 | Mob and Demob | 1 | Job | Lump Sum | $140,000.00 |
| 0002 | Clearing and Grubbing | 1 | Job | Lump Sum | $112,000.00 |
| 0003 | Remove Bank Protection Material From Existing River Bank | 10,000* | CY | $5.50 | $55,000.00 |
| 0004 | Stripping of Topsoil (Levees and Terraces) | 13,860* | CY | $3.00 | $41,580.00 |
| 0005 | Excavation & Disposal of Floodplain & Marshplain Terraces (including excavation of Terrace Trench) | 151,500* | CY | $3.50 | $530,250.00 |
| 0006 | Excavation and Disposal of Contaminated Soil | 74,100* | CY | $4.00 | $296,400.00 |
| 0007 | Dredge Disposal Site Excavation | 14,700* | CY | $3.00 | $44,100.00 |
| 0008 | Levee Foundation Excavation | 11,300* | CY | $4.00 | $45,200.00 |
| 0009 | Excavate Flood Control Levee Inspection Trench | 5,880* | CY | $3.00 | $17,640.00 |
| 0010 | Dredge Disposal Levee Test Pits | 1 | Job | $4,000.00 | $4,000.00 |
| 0011 | Levee Fill (Flood Control Levee, Dredge Disposal Levee, Hartle Court) | 43,520* | CY | $5.00 | $217,600.00 |
| 0012 | Aggregate Base Course | 1,630* | Tons | $15.00 | $24,450.00 |
| 0013 | Bituminous Surface Course | 256* | Tons | $132.00 | $33,792.00 |
| 0013 | Dredge Disposal Site Drainage Gate | 1 | Job | $8,000.00 | $8,000.00 |
| 0015 | 24" HDPE Storm Drain | 1 | Job | $12,000.00 | $12,000.00 |
| 0016 | Concrete Headwall with Flapgate | 1 | Job | $14,000.00 | $14,000.00 |
| 0017 | Chain Link Fencing | 1 | Job | $10,000.00 | $10,000.00 |
| 0018 | Levee Gates | 1 | Job | $6,000.00 | $6,000.00 |
| 0019 | 24" RCP Culverts | 1 | Job | $4,000.00 | $4,000.00 |
| 20 | Existing 24" Sewer Modification | 1 | Job | $6,000.00 | $6,000.00 |
| | TOTAL BASE ITEMS | | | | $1,622,012.00 |

Note 1 - * Quantity is estimated.

**TPA-CKY Joint Venture**
Standard Agreement for Subcontractor Services

| CONTRACT LINE ITEM NO (CLIN) | DESCRIPTION OF ITEM *OPTION ITEMS* | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---|---|---|---|---|---|
| 0025 | Dredge Levee Foundation Excavation | 13,100* | CY | $3.00 | 39,300.00 |
| 0026 | Additional Dredge Levee Fill | 13,100* | CY | $3.00 | 39,300.00 |
| | **TOTAL OPTION ITEMS** | | | | $78,600.00 |
| | **TOTAL BASE AND OPTION ITEMS** | | | | $1,700,612.00 |

Note 1 - * Quantity is estimated.

Note 2- Options items have not been exercised.  Unit prices are included for future reference if Option item(s) are exercised.

TPA-CKY Joint Venture
Standard Agreement for Subcontractor Services

## PART I - THE SCHEDULE
### SECTION C
### DESCRIPTION/SPECIFICATIONS/STATEMENT OF WORK

C.1    SCOPE OF WORK

(a.)    Subcontractor will provide all services, including labor and materials, to perform the Contract 2 East (NSD), Napa River/Creek Flood Protection Project, excluding the following Items. TPA-CKY or its subcontractors will provide: On-site Safety Officer, Quality Control Officer, Quantity Surveys, Contract Line Items 0021 – Install, Maintain and Remove Turbidiy Curtain, 0022 – Native Grass Seeding, 0023 – Exotic Grass Seeding and 0024 – Storm Water Pollution Prevention Measures. All staking and engineering to be provided by TPA-CKY.

(b.)    Subcontractor shall provide and pay for all labor, equipment, tools, materials, scaffolding, licenses and permits, insurance, sales and other taxes, hoisting, handling, transportation, disposal, professional and non-professional services, supervision, coordination, communication, samples, submittals, and shall perform all other acts and supply all other things necessary, to fully and properly complete the work in compliance with all applicable federal, State, and local laws and regulations.

(c.)    The Subcontractor shall further provide and pay for all related facilities described in any of the Prime Contract documents, including all work expressly specified therein and such additional work as may be reasonably inferred there from, except only those items that are specifically stated in the Contract Documents as not the obligation of the Subcontractor. The obligations imposed upon the Subcontractor are the same as the obligations imposed upon the Prime Contractor by the USACE (Owner), or the USACE's authorized representative.

(d.)    The Subcontractor, in executing this Agreement does represent and guarantee to the Prime Contractor that:

1    Subcontractor has reviewed and become competently familiar with all information and requirements specified in the drawings, specifications, addenda, environmental surveys and reports, including without limitation, any outside materials, references, standards, or other information whatsoever that has been incorporated in the Agreement by reference.

2    Subcontractor has acted as a reasonably prudent contractor by conducting all reasonable site investigations and by becoming familiar with existing conditions, including those conditions that can be reasonably inferred from such investigations, such that Subcontractor has incorporated such information and knowledge into its bid.

3    Subcontractor will be bound to the Prime Contractor in the same manner and to the same extent as the Prime Contractor is bound to the Owner or Owner's Representative, including, without limitation, any determination made by Owner or Owner's Representative with respect to differing site conditions, changes, equitable adjustments and claims.

(e.)    INCORPORATION OF PROVISIONS BY REFERENCE – The entire Section C of the Prime Contract is incorporated in this Agreement by reference.

## PART I - THE SCHEDULE

### SECTION E
### INSPECTION AND ACCEPTANCE

E.1    INCORPORATION OF PROVISIONS BY REFERENCE: The entire Section E of the Prime
Contract is incorporated in this Agreement by reference.

## PART I - THE SCHEDULE

### SECTION F
### DELIVERIES OR PERFORMANCE

F.1    INCORPORATION OF PROVISIONS BY REFERENCE: The entire Plans and specifications of
the Prime
Contract is incorporated in this Agreement by reference.

## PART I - THE SCHEDULE

### SECTION G
### CONTRACT ADMINISTRATION

G.1    INCORPORATION OF PROVISIONS BY REFERENCE: The entire Section G of the Prime
Contract is incorporated in this Agreement by reference.

G.2    All technical direction by the Prime Contractor's Program Manager shall in writing. Technical
direction does not include making changes to the terms and conditions or scope of work of the
contract.

## PART I THE SCHEDULE

### SECTION H
### SPECIAL CONTRACT REQUIREMENTS/CLAUSES/PROVISIONS

H.1    INCORPORATION OF PROVISIONS BY REFERENCE: The entire Section H of the Prime
Contract is incorporated in this Agreement by reference.

H.2    INDEMNIFICATION – "Subcontractor" agrees to defend, indemnify, and hold harmless TPA-
CKY, A Joint Venture ("Contractor") and all upper tier contractors to whom Contractor is
obligated, the project Owner, and all of their respective agents or employees (collectively the
"Indemnities"), from any and all claims, demands, losses, and liabilities to or by third parties
arising from, resulting from, or connected with work performed or to be performed under this
Subcontract by Subcontractor, its agents, employees, and sub-subcontractors and suppliers of any
tier, even though such claims may prove to be false, groundless or fraudulent, to the fullest extent
permitted by law and subject to the limitations provided below. Subcontractor's duty to indemnify
any Indemnitee shall not apply to liability form damages arising out of bodily injury to persons or
damage to property caused by or resulting from the sole negligence of such Indemnitee or its
agents or employees.

Subcontractor's duty to indemnify any Indemnitee for liability for damages arising out of bodily
injury to person or damage to property caused by or resulting from the concurrent negligence of

(a) such Indemnitee, or its agents or employees, and (b) Subcontractor or its agents, employees,
and sub-subcontractors and suppliers of any tier shall apply only to the extent of negligence of
Subcontractor, its agents, employees and sub-subcontractors and suppliers of any tier or others for
whom Subcontractor is responsible.  Subcontractor specifically and expressly waives any
immunity the may be granted it under the California State Industrial Insurance Act, Title 512

**TPA-CKY Joint Venture**
**Standard Agreement for Subcontractor Services**

RCW. Further, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable to or for any third party under worker's compensation acts, disability benefits acts, or other employee benefit acts; provided Subcontractor's waiver of immunity by the provision of this paragraph extends only to claims against Subcontractor by the Indemnitees, and does not include, or extend to, any claims by Subcontractor's employees directly against Subcontractor. Subcontractor's duty to indemnify the Indemnitees for liabilities or losses, other than for bodily injury to persons or damage to property caused by or resulting from negligence, shall apply only to the extent of the fault of Subcontractor, its agents, employees and sub-subcontractors or suppliers of any tier, except in situations where fault is not a requirement for liability, in which case indemnity will be provided to the extent the liability or loss was caused by Subcontractor, its agents, employees, sub-subcontractors and suppliers of any tier. In no event shall either TPA CKY JV or CVC be liable to the other for any punitive, exemplary, special, indirect, incidental or consequential damages, (including, but not limited to, lost profits, lost business opportunities, lose of use of equipment down time, and loss of or corruption to data), arising out of or relating to this Subcontract regardless of the legal theory under which such damages are sought, and even if the parties have been advised of the possibility of such damages or loss.

H.3     COMPENSATION – Subcontractor's Services shall be provided for the amount or at the rates stated in the contract, Part I-Section B.

H.4     LABOR, EQUIPMENT, LICENSES, AND CERTIFICATIONS – SUBCONTRACTOR will provide all required labor, equipment and materials to execute the scope delineated in this Agreement except as otherwise indicated in SCOPE, above. SUBCONTRACTOR and its employees/craft labor will maintain all required licenses and permits such as current professional licenses, drivers licenses, operators licenses, vehicle licenses, health & safety training certificates, and professional certifications. SUBCONTRACTOR employees/craft labor will carry these licenses/certifications to the job site for inspection by an authorized TPA-CKY representative prior to the start of work.

H.5     STANDARD OF CARE – The standard of care applicable to SUBCONTRACTOR's services will be the degree of skill and diligence normally employed by professionals or other subcontractors performing the same or similar services. SUBCONTRACTOR will reperform any services not meeting this standard without additional compensation.

H.6     INSURANCE – The SUBCONTRACTOR agrees to obtain and maintain the following insurance coverage:

(a)     Worker's compensation and occupational disease insurance requirements in accordance with federal statutes and those of the jurisdiction in which the work under this subcontract is performed.

(b)     Employer's liability insurance coverage of at least $1,000,000 for (1) bodily injury for each accident, and (2) bodily injury by disease for each person and policy limit.

(c)     General liability insurance coverage (including bodily injury liability, contractual liability, and property damage) written on the comprehensive form of policy of at least $1,000,000 per occurrence for bodily injury and $2,000,000 aggregate and $1,000,000 per occurrence for property damage.

(d)     Comprehensive automobile liability insurance coverage providing at $200,000 per person and $500,000 per occurrence for bodily injury and $20,000 per occurrence for property damage.

H.7     TERMINATION – This Agreement may be terminated for convenience on 30 days' written notice if either party fails substantially to perform through no fault of the other. It may be terminated for cause if the defaulting party does not commence correction of its nonperformance within five (5) days of written notice (addressed and mailed to the address set forth in this Agreement) and diligently complete the correction thereafter. On termination for convenience, SUBCONTRACTOR will be paid for all authorized work performed up to the termination date plus termination expenses, such as, but not limited to, reassignment of personnel, subcontract termination costs, and related close out costs.

**TPA-CKY Joint Venture**
**Standard Agreement for Subcontractor Services**

| | |
|---|---|
| H.8 | PAYMENT TO SUBCONTRACTOR – SUBCONTRACTOR will issue monthly invoices for all work performed under this Agreement; Invoices must include the Agreement Number, Project Name, and Project Number. |

For Client billable services, TPA-CKY will bill the Client monthly on account of work performed, including SUBCONTRACTOR's services and expenses, and shall pay SUBCONTRACTOR within seven (7) days of the time TPA-CKY receives payment from the Client on account thereof.

TPA-CKY reserves the right to make payment to SUBCONTRACTOR by two-party check in the event SUBCONTRACTOR fails to make timely payment to its suppliers, providers, or sub-subcontractors.

| | |
|---|---|
| H.9 | LIQUIDATED DAMAGES – CONSTRUCTION (SEE PRIME CONTRACT CLAUSE 52.211-2 |

(a) If the subcontractor fails to deliver the supplies or perform the services within the time specified in this agreement, or any extension, the Subcontractor shall, in place of actual damages, pay to TPA-CKY as fixed and agreed liquidated damages, for each day of delay, the sum of $575.00.

(b) If TPA-CKY terminates the Subcontractor's right to proceed, the resulting damages will consist of liquidated damages until such reasonable time as may be required for final completion of the work together with any increased costs occasioned TPA-CKY in completing the work.

(c) If TPA-CKY does not terminate the Subcontractor's right to proceed, the resulting damage will consist of liquidated damages until the work is completed or accepted.

| | |
|---|---|
| H.10 | CLAIMS – SUBCONTRACTOR agrees that no claim against TPA-CKY regarding work performed under the terms of this Agreement shall be considered valid if filed more than 30 days following completion of SUBCONTRACTOR Scope of Work. |

TPA-CKY Joint Venture
Sta    rd Agreement for Subcontractor Serv

## PART II CONTRACT CLAUSES
### SECTION I

Incorporation of Provisions by Reference: The entire Section I of the Prime Contract is incorporated in this agreement by reference.

## PART III LIST OF ATTACHMENTS
### SECTION J

J.1      Contract W91238-05-C-0019 , in its entirety.
         (Note: The attachments can be obtained electronically at the Government reference web sites.)

# PROOF OF SERVICE

STATE OF CALIFORNIA
COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within entitled action; my business address is 650 Town Center Drive, Suite 1200, Costa Mesa, California 92626-1925.

On November 8, 2007, I served the foregoing document(s) described as **CROSS-CLAIM OF TPA-CKY JOINT VENTURE** on the interested parties in this action by placing a copy thereof enclosed in a sealed envelope addressed as follows:

**See Attached List**

☒ **BY MAIL.** I caused such envelope with postage thereon fully prepaid to be placed in the U.S. Mail at Costa Mesa, California. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **BY FACSIMILE TRANSMISSION.** I caused such document to be transmitted to the addressee(s) facsimile number(s) noted herein. The facsimile machine used complies with Rule 2003 and no error was reported by the machine. Pursuant to Rule 2008(e), I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

☐ **BY FEDERAL EXPRESS.** I caused such envelope to the deposited at the Federal Express office at Costa Mesa, California for guaranteed one/two day delivery with delivery charges prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for delivery by Federal Express delivery service. Under that practice, it would be deposited with the delivery service on that same day with delivery charges thereon fully prepaid at Costa Mesa, California in the ordinary course of business for delivery to the addressee.

Executed on November 8, 2007, at Costa Mesa, California.

☐ **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☒ **(Federal)** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Katherine Lloyd

559417.1

1

# SERVICE LIST

2

Stan D. Blyth, Esq.                             Attorney for Plaintiff
THE LAW OFFICES OF                    RENTAL SOLUTIONS, LLC

3

STAN D. BLYTH
11 Embarcadero West, Suite 145

4

Oakland, Ca  94607
Phone:  510-272-0200

5

Fax:  510-451-3931

6

James E. Ganzer, Esq.                        Attorneys for Defendant and Cross-
GANZER & WILLIAMS                     Defendant CENTRAL VALLEY

7

1617 St. Mark's Plaza, Suite A          CONSTRUCTION and Cross-
P.O. Box 7683                                     Defendants PHILLIP VALLEJO and

8

Stockton, CA  95267                          ANTHONY GENE ARNAIZ
Phone:  209-476-1661

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

559417.1                                                              2